UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| California Drywall/Lathing Industry Labor-Management Cooperation, Inc, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MLR Drywall Services Inc, et al.,<br><br>Defendants.<br>_____/ | No. C 09-3531 JSW (JL)<br><br>**Report and Recommendation re Motion for Default Judgment (Docket # 14 )** |

**I.     Introduction**

Plaintiffs' motion for default judgment was referred by the district court (Hon. Jeffrey S. White) under 28 U.S.C. §636(b). This Court finds the matter suitable for decision without a hearing as provided by Civil Local Rule 7-1(b) The matter was briefed by Plaintiffs and submitted on the record.

Plaintiffs move this Court for an order granting entry of a default judgment for unpaid contributions, interest thereon, and attorneys' fees and costs, and for an order compelling MLR Drywall Services, Inc., A California Corporation (hereinafter "Defendant") to forthwith submit to an audit of their books, records, papers and reports as required by the Agreements to which they are bound. Plaintiffs also move the Court for an order granting entry of a default judgment confirming the Decision and Award of Arbitrator Robert M. Hirsch issued February 4, 2009 pursuant to the terms of a collective bargaining agreement

between the parties. The motion was brought pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedures (F.R.C.P.), and is based on the following grounds. The Clerk entered default against the Defendant on October 13, 2009, who was timely served with the complaint effective on August 24, 2009, but failed to answer the complaint.

Plaintiffs are therefore entitled to entry of default judgment against the Defendant under F.R.C.P. 55(b)(2) by the Court. This Notice and Motion are supported by the Memorandum Points and Authorities, Declaration of Michael Plommer, Declaration of Concepción E. Lozano-Batista and the [Proposed] Judgment.

**II. MOTION**

Plaintiffs, by and through their counsel, applied, pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, for judgment by default in their favor and against Defendant for (1) an order confirming the Decision and Award of Arbitrator Robert M. Hirsch on Grievance #09-001, issued February 4, 2009 in its entirety; (2) an Order directing Defendant to submit to an audit of their books and records as required by the agreement to which they are bound; (3) that upon the completion of the audit, contributions due and owing in an amount to be determined by said audit and interest thereon; (4) reasonable attorneys' fees, and Plaintiffs' costs of suit; (5) for an order directing and permanently enjoining Defendant to timely submit all required monthly contribution reports and contributions due and owing by Defendant; (6) for this Court to retain jurisdiction; and (7) for such and further relief as to this Court seems just and proper.

The grounds for Plaintiffs' application are as follows:

1. The Clerk of the Court entered the Request for Entry of Default on October 13, 2009, against Defendant, for failure to answer or otherwise respond to the complaint herein; and

2. Plaintiffs are entitled to the relief sought herein.

## III. DISCUSSION

### A. RELEVANT FACTS.

On September 28, 2007, Defendant, MLR Drywall Services, Inc., a California Corporation, (hereinafter "Defendant"), executed a written collective bargaining agreement (hereinafter "Memorandum Agreement") with the California Drywall/Lathing Industry Labor-Management Cooperation Committee, Inc. that incorporates the terms of the Drywall/Lathing Master collective bargaining agreement ("Master Agreement"). The Master Agreement incorporates the terms of the Trust Agreements that govern each of the Trust Funds (hereinafter the Master Agreement and Trust Fund Agreements when collectively referred to will be called the "Agreements"). Declaration of Michael Plommer in Support of Motion for Default Judgment (hereinafter "Plommer Decl.") ¶¶2- 4; Master Agreement, Ex. A to Plommer Decl.; Trust Agreements, Ex. C to Plommer Decl.

The Agreements require signatory employers to pay hourly rates for every hour worked by its employees to the employees and to make timely contributions into the above-captioned Trust Funds at a specified rate for each hour worked by, or paid to, all employees performing work covered under the Master Agreement. Plommer Decl. ¶5 and ¶7. The Agreements also require employers to report the number of covered hours worked by, or paid to, each of their employees performing covered work by submitting Employer Reports of Contributions, along with the amounts owed pursuant to the Reports, to the Carpenters Trust Funds. Plommer Decl. ¶7. Liquidated damages in the amount of twenty dollars ($20.00) or ten percent (10%) of the outstanding amount owed, whichever is greater, is assessed by each Trust Funds against the employer, if the employer remits the contributions late. Plommer Decl. ¶7; Trust Agreements, Ex. C to Plommer Decl. at Art. II, § 10 to the Pension Trust Agreement, Art. II, § 10 to the Annuity Trust Agreement, Art. II, § 10 to the Health and Welfare Trust Agreement, Art. II, § 10 to the Vacation-Holiday Trust Agreement, Art. II, § 9 to the Training Trust Agreement.

The Trust Agreements governing the Trust Funds provide for an audit of the books and records of signatory employers so that the Carpenters Trust Funds may determine if the employer is making full and prompt payment of required contributions. Plommer Decl. ¶11. Article IV, § 6 of the Trust Agreement for the Carpenters Pension Trust Fund, which is representative of the language of the language of the Agreements for the other Trust Funds named in this proceeding provides the Trust Funds the right to:

> … enter upon the premises of the Individual Employer during business hours, at a reasonable time or times, and to examine and copy books, records, papers or reports of the Individual Employer as necessary to determine whether the Individual Employer is making full and prompt payment of all sums required to be paid by him or it to the Fund. In addition, each Individual Employer will comply with all of the terms and conditions of the 46 Counties Agreement with regard to audits.

Plommer Decl. ¶11; Pension Trust Agreement, Ex. C to Plommer Decl. See also, Exhibit C to Plommer Decl. at Art. IV, § 6 to Annuity Trust Agreement, Art. IV, § 7 to Health and Welfare Trust Agreement, Art. IV, § 6 to Vacation-Holiday Trust Agreement, Art. IV, § 6 to Training Trust Agreement.

Defendant has failed to pay proper Trust Fund contributions, and to submit to an audit, as requested by the Trust Funds. Plommer Decl. ¶¶12-13. Plaintiffs request Defendant to pay the amounts currently due and owing under the arbitration award before this Court, and to submit to an audit to determine whether its employees performed additional covered work under the Master Agreement for which contributions are owed to the Trust Funds.

Defendant owes attorney's fees and costs, as the Master and Trust Agreements provide for the recovery of attorneys' fees and costs in an action to recover a delinquent balance due. Plommer Decl. ¶14; Trust Agreements, Ex. C to Plommer Decl. at Art. IV, § 3 to Pension Trust Agreement, Art. IV, § 3 to Annuity Trust Agreement, Art. IV, § 3 to Health and Welfare Trust Agreement, Art. IV, § 3 to Vacation-Holiday Trust Agreement, Art. IV, § 3 to Training Trust Agreement. Further, the arbitration awards that Plaintiffs seek to confirm provide for the payment of fees and costs if Defendant refuses to pay the amounts owed. Arbitration Award, Ex. E to Plommer Decl. The Trust Funds have incurred attorney's fees

and costs in bringing this action. The estimated total attorneys' fees are $3,431.25. Plommer Decl. ¶14, and Declaration of Concepción E. Lozano-Batista in Support of Motion for Default Judgment ("Lozano Decl.") ¶11.

In light of the unpaid known liability owed by Defendant to the Trust Funds and its failure and refusal to submit to an audit, on August 3, 2009, the Union and the Trust Funds filed suit to request a confirmation of the arbitration award and to obtain an injunction for an audit. Defendant was served with the Summons and Complaint on August 24, 2009, but did not respond to the Complaint. Consequently, at the request of the Plaintiffs, the Clerk entered default against Defendant on October 13, 2009.

**B.    RELIEF REQUESTED.**

The Trust Funds request that the Court enter a default judgment in favor of the Union and the Trust Funds in which it is ordered that: (1) Defendant comply with the Decision and Award of Arbitrator Robert M. Hirsch on Grievance #09-001, issued February 4, 2009 in its entirety; (2) Defendant pay the Plaintiffs' attorney's fees relating to this action in the amount of $3,431.25 and costs in the amount of $641.95; (3) the Court issues an injunction compelling Defendant to forthwith submit to an audit by auditors selected by the Trust Funds, covering the time period beginning June 1, 2007 to the present date, at premises of the Defendant, or location where the records are kept, during business hours, at a reasonable time or times, and to allow said auditors to examine and copy such books, records, papers, reports of Defendant relevant to the enforcement of the Master Agreement or the Trust Agreements, including, but not limited to, the following:

> Individual earning records (compensation); W-2 forms; 1096 and 1099 forms; reporting forms for all Trust Funds; State DE-3 tax reports; workers compensation insurance report; employee time cards; payroll journal; quarterly payroll tax returns (form 941); check register and supporting cash voucher; Form 1120- 1040 or partnership tax returns; general ledger - (portion relating to payroll audit); (4) that an accounting be had between Plaintiffs and Defendant; and (5) that upon completion of the accounting, the Judgment entered by the Court that may be amended by the Plaintiffs to incorporate the outstanding sums ascertained from the audit to be due from Defendant, as well as liquidated damages and interest on said sums.

**C.    ISSUES TO BE DECIDED**

The Court must decide the following issues:

1. Should the Court confirm the arbitration award at issue?
2. Should the Court order Defendant to produce the documents necessary for the Trust Funds to complete their audit, since the Trust Agreements require it to submit to the audit?
3. Are the Trust Funds entitled to attorneys' fees and costs related to this matter, pursuant to the terms of the Agreements and ERISA § 502(g)(1)?

**D.   ANALYSIS**

**1.   The Arbitration Award Should Be Confirmed In its Entirety.**

The arbitration award issued by Robert M. Hirsch on February 4, 2009 should be confirmed in its entirety, as the parties agreed to arbitrate their disputes and the awards are valid under the law.

**a)   The Parties Agreed That The Question Would Be Resolved Through Arbitration**

By virtue of the terms and conditions of the Master Agreement, the parties agreed that an arbitrator's decision would be final and binding on all parties. Under such circumstances, and having voluntarily submitted the dispute to arbitration by naming an arbitrator, the employer cannot now contest the decision of Arbitrator Robert M. Hirsch. In *Ficek v. Southern Pacific Co.*, 338 F.2d 655 (9th Cir. 1964) cert. denied, 380 U.S. 988 (1965), the Ninth Circuit stated: A claimant may not voluntarily submit his claim to arbitration, await the outcome, and, if the decision is unfavorable, then challenge the authority of the arbitrator's act. Ficek, 338 F.2d at 657.

Having agreed to submit this dispute to an arbitrator, the employer cannot now argue that it was not arbitrable. See also *International Brotherhood of Teamsters v. Washington Employers, Inc.*, 557 F.2d 1345, 1349-50 (9th Cir. 1977); *International Association of Machinists and Aerospace Workers, Dist. 776 v. Texas Steel Co.*, 538 F.2d 1116, 1120 (5th Cir. 1976).

### b) The Arbitration Decisions Meet The Applicable Tests For Validity

The Ninth Circuit has defined the district courts' power with respect to the review of arbitration awards as follows:

> Judicial Review of arbitration awards is limited. An award is legitimate so long as it "draws its essence" from the collective bargaining agreement and does not "manifest an infidelity" to the agreement. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597-99, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). "[I]f, on its face, the award represents a plausible interpretation of the contract in the context of the parties' conduct, judicial inquiry ceases and the award must be affirmed." Holly Sugar Corporation v. Distillery Union, 412 F.2d 899, 903 (9th Cir. 1969).

*Riverboat Casino, Inc. v. Local Joint Executive Board of Las Vegas*, 578 F 2d 250, 251 (9th Cir. 1978).

In this case, this Court could overturn the award in question only if it found the reasoning "so palpably faulty no judge, or group of judges could ever conceivably have made such a ruling." *Safeway Stores v. Bakery Workers Local 111*, 390 F.2d 79, 82 (5th Cir. 1968). The awards herein clearly meet the test. The Court is "not empowered to review the merits of an arbitration award which draws its essence from a collective bargaining agreement." *Painters Local Union No 171 v. Williams & Kelly, Inc.*, 605 F.2d 535, 538 (10th Cir. 1979).

The United States Supreme Court has clearly spoken on the role of the courts in enforcing awards of arbitrators involving the interpretation of collective bargaining agreements between labor and management. The Court sustains the notion that voluntary arbitration agreements should not be lightly treated by the courts or other institutions dealing with labor-management relations and such awards should be given awarded the greatest weight. Thus, the Supreme Court stated in *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960):

> When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of the problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsman may never have thought of what specific remedy should be awarded to meet a particular contingency. Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an

infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

The tests set forth in *Enterprise* must be applied hereto and a judgment confirming the awards be granted. In *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3rd Cir. 1969), the Third Circuit clearly stated that the award must be upheld "if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention...". See also *United Steelworkers v. Warrior & Gulf*, 363 U.S. 574, 582 (1960); *Operating Engineers Local 150 v. Flair Builders, Inc.*, 406 U.S. 487 (1972); *Northern California District Council of Hod Carriers v. Pennsylvania Pipeline, Inc.*, 103 Cal. App. 3d 163, 170 (1980).

It has been uniformly held that where the contract is not explicit concerning the proper remedy, the arbitrator, or a Board of Adjustment, is given wide latitude in fashioning an appropriate one. *Mogge v. District 8, International Association of Machinists*, 454 F.2d 510, 514 (7th Cir. 1971). The Ninth Circuit states the rule thus: "[I]f on its face, the award represents a plausible interpretation of the contract in the context of the parties' conduct, judicial inquiry ceases and the award must be affirmed." *Holly Sugar Corp. v. Distillery, Rectifying, Wine & Allied Workers International Union*, 412 F.2d 899, 903 (9th Cir. 1969). Accordingly, the Court should confirm the arbitration award before it.

**2.    The Trust Funds Have A Right To Compel The Audit At Issue.**

The Trust Agreement gives the Trust Funds the right to conduct an audit of Defendant's books and records. The Trust Agreement specifically confers the right to:

> …enter upon the premises of the Individual Employer during business hours, at a reasonable time or times, and to examine and copy books, records, papers or reports of the Individual Employer as necessary to determine whether the Individual Employer is making full and prompt payment of all sums required to be paid by him or it to the Fund. In addition, each Individual Employer will comply with all of the terms and conditions of the 46 Counties Agreement with regard to audits.

Plommer Decl. ¶11; Trust Agreements, Ex. C to Plommer Decl. at Art. IV, § 6 to Pension Trust Agreement, Art. IV, § 6 to Annuity Trust Agreement, Art. IV, § 7 to Health and Welfare Trust Agreement, Art. IV, § 6 to Vacation-Holiday Trust Agreement, Art. IV, § 6 to Training Trust Agreement.

Where a collective bargaining agreement, as here, gives Trustees of an employee benefit plan the right to audit an employer's books and records, it will be enforced. *Central States Southeast and Southwest Areas Pension Fund v. Central Transport Inc.*, 472 US 559 (1985) Reh'g denied 473 U.S. 926 (1985); *Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp*, 920 F.2d 1491 (9th Cir. 1990), cert. denied, 501 U.S. 1232 (1991). In addition, the Arbitration Award of February 4, 2009 also grants Plaintiffs an audit of the Defendant's books and records from the time period of June 1, 2007 through the present date. As such, the Court should require Defendant to submit to an audit and to pay any amounts due and owing as a result.

### 3. The Trust **Funds Are Entitled To Their Attorneys' Fees And Costs.**

The governing Trust Agreements and Master Agreement provide that if an employer is delinquent in making fringe benefit contributions and legal consultation is sought by the Board of Trustees, reasonable attorneys' fees, court costs, and all other expenses incurred in enforcing collection will be paid by the delinquent employer. Plommer Decl. ¶14; Trust Agreements, Ex. C to Plommer Decl. at Art. IV, § 3 to Pension Trust Agreement, Art. IV, § 3 to Annuity Trust Agreement, Art. IV, § 3 to Health and Welfare Trust Agreement, Art. IV, § 3 to Vacation-Holiday Trust Agreement, Art. IV, § 3 to Training Trust Agreement. Further, the arbitration award Plaintiffs seeks to confirm provide for the payment of fees and costs where Defendant refuses to pay the amounts owed. Arbitration Award, Ex. E to Plommer Decl. Because courts generally award attorneys' fees based on such contractual authorization, the Defendant should be liable for the reasonable cost of attorneys' fees and costs incurred by the Trust Funds in seeking to collect the delinquencies. *Kemner v. District Council of Painting and Allied Trades No. 36*, 768 F.2d 1115, 1120 (9th Cir. 1985). Moreover, the Trust Funds are entitled to a mandatory award of attorneys' fees under ERISA §502(g)(1). Plaintiffs have also been required to secure the services of counsel for the prosecution and enforcement of the Award. Because Defendant's refusal to comply with the arbitration awards is unjustified, in conflict with the awards themselves, and in bad faith, Plaintiffs seek attorneys' fees and costs incurred in obtaining compliance with the award.

The Supreme Court has held that attorneys' fees can be awarded "when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975). In 1983, the Ninth Circuit Court of Appeals applied that rule in a case where, as here, an employer refused to abide by the award of an arbitrator. In *International Union of Petroleum and Industrial Workers v. Western Industrial Maintenance, Inc.*, 707 F.2d 425 (9th Cir. 1983), the court held that:

> "[B]ad faith may be demonstrated by showing that a defendant's obstinacy in granting a plaintiff his clear legal rights necessitated resort to legal action with all the expense and delay entailed in litigation."

*Huecker v. Milburn*, 538 F.2d 1241, 1245 n.9 (6th Cir. 1976) The award of attorneys' fees in the latter context satisfies a dual purpose -- deterrence and compensation. The threat of an award of attorneys' fees tends to deter frivolous dilatory tactics.

The award also compensates a plaintiff "for the added expense of having to vindicate clearly established rights in court." *Id. Western Industrial*, 707 F.2d at 428. The Ninth Circuit has also held that "an unjustified refusal to abide by an arbitrator's award may equate [with] an act taken in bad faith, vexatiously or for oppressive reasons." Id. at 428. The court ruled that the employer did not present justifiable grounds for the invalidity of the arbitration award, rejecting the contention that one of the issues was not arbitrable.

Unjustified refusal to abide by an arbitrator's award may equate, in and of itself, an act taken in bad faith, vexatiously or for oppressive reasons. *Sheetmetal Workers' Int'l Ass'n, Local Union No. 359 v. Madison Industries, Inc. of Arizona*, 84 F.3d 1186, 1192 (9th Cir. 1996) (noting that employer failed to file a petition to vacate the award and requested a vacation only in response to the Union's petition to confirm it). Arbitration is a fundamental foundation for stable national labor relations policy, and advances the effective resolution of disputes and the furthering of industrial stabilization. Therefore, "the deterrence aspect of an award of attorneys' fees is particularly served where a party, without justification, refuses to abide by an arbitration award." *Western Industrial*, 707 F.2d at 428.

The District Court has the power to award attorneys' fees and expenses to the prevailing party in a suit to enforce an arbitration awards if the losing party acted in bad faith. There must be an unjustified refusal to abide by the arbitrator's decision, and the objections to an award must be frivolous. The failure of the party opposing a decision to take timely action to challenge it on valid grounds, thus forcing the other party to undertake the time consuming and burdensome expense of an enforcement action, are factors in determining bad faith. *Courier-Citizen Co. v. Boston Electrotypers Union No. 11*, 702 F.2d 273, 282 (1st Cir. 1983) (endorsing attorneys' fees award "when a party 'without justification' contests an enforceable award") *United Steelworkers of America v. United States Gypsum Co.*, 492 F.2d 713, 724 (5th Cir. 1974) cert. denied, 419 U.S. 998 (1974). ("The district court has the authority to award attorneys' fees where it determines that a party has without justification refused to abide by an award of an arbitrator."). *Actors Equity v. American Dinner Theater*, 802 F.2d 1038 (8th Cir. 1986); *Local 34 Asbestos Workers v. General Pipe Covering*, 792 F.2d 96 (8th Cir. 1986);International Union, *United Auto., Aerospace and Agr. Implement Workers of America v. United Farm Tools, Inc., Speedy Mfg. Div.,* 762 F.2d 76, 77 (8th Cir. 1985).

Additionally, an award of attorneys' fees and costs is mandated by ERISA §502(g)(1) where a trust fund succeeds in its action. Where, as here, fees and costs are mandated by the agreement between the parties, they are also recoverable. (*Sherman v. Carter*, 353 U.S. 210, 220 (1957) (attorneys' fees, court costs, and other reasonable expenses awarded per trust agreement); *Sherman v. Carter*, 301 F.2d 467 (9th Cir. 1962) (attorneys' fees, court costs, and expenses allowed through entire series of fees allowed per labor agreement); *Plumbers' Pension Fund v. Domas Mechanical Contractors, Inc.*, 778 F.2d 1266 (7th Cir. 1985) (attorneys' fees and costs awarded in suit to enforce arbitrator's award).)

In the present case, the parties to a collective bargaining agreement included in their agreement an inexpensive and efficient dispute resolution mechanism: the grievance arbitration procedure. This is one of the most important provisions of a collective bargaining agreement between an employer and a Union on behalf of its members. In most cases,

employees give up the right to strike during the term of a contract in return for the employer's promise to submit all "grievances" to a neutral arbitrator for final and binding decision. Moreover, both parties benefit from the existence of this mechanism designed to provide an inexpensive and efficient resolution of disputes. By refusing to comply with final and binding arbitration awards, Defendant has subverted a fundamental provision of the agreement.

Defendant has provided no reason why it refused to comply with the award. Because Defendant has caused unnecessary expense and delay, and has failed to set forth any meritorious arguments to justify its conduct, the Court should issue an order confirming the arbitration award and awarding Plaintiffs their reasonable attorneys' fees as provided by law. A Declaration specifically documenting the time spent by the Trust Funds counsel was provided by Plaintiffs. The total amount of attorneys' fees to date in this case is $3,431.25, with costs of $641.95.

4.  Default judgment is proper in this case, as Defendant has not appeared.

Under Rule 55(b)(2) of the Federal Rules of Civil Procedures (F.R.C.P.), Default Judgment is proper against a defendant who does not appear where the claim is for a sum certain or one that can be made certain by computation. *Combs v. Col & Mineral Mgmt. Serv., Inc.,* 105 F.R.D 472, 474 (D.DC 1984)). Defendant in this case was timely served with the complaint on August 24, 2009, but failed to answer. Plaintiffs requested Entry of Default against Defendant. The Clerk entered default against Defendant on October 13, 2009.

Defendant promised to contribute and pay to Plaintiffs the hourly amounts required by said Agreements for each hour paid for or worked by any of their employees who performed any work covered by said Agreements, and that it would be subject to and bound by all of the terms, provisions and conditions of the Trust Agreements as incorporated by the terms of the Master Agreement, including entry for audit. Pursuant to these Agreements, Plaintiffs Motion for Default Judgment requests entry of judgment in their favor for a confirmation of the Awards providing for payment of contributions and liquidated damages, as well as audit entry and attorneys' fees and costs. Plaintiffs also

request that the Court maintain jurisdiction over this action to enforce the Order compelling an audit and payment of all amounts found due and owing. Accordingly, Plaintiffs request that Judgment be entered in their favor according to the terms of the Agreements.

### E. CONCLUSION AND RECOMMENDATION

For the reasons stated above, this Court recommends that the district court enter judgment in Plaintiffs' favor confirming the arbitration award of February 4, 2009 for Grievance # 09-001, requiring Defendant to pay outstanding trust fund contributions, as well as to submit to an audit and to pay Plaintiffs their attorneys' fees and costs.

Respectfully submitted,

DATED: January 19, 2010

_____
JAMES LARSON
United States Magistrate Judge

G:\JLALL\CASES\CIV-REF\09-3531\R&R.wpd